CHARLES R. GWYN AND JOHN R. GWYN
vs.
JOSIAH LEE ET AL.

} July Term, 1849.

[HOLDER OF PROMISSORY NOTES—USURY.]

A *bona fide* holder of a negotiable instrument for a valuable consideration, without notice of facts which effect its validity as between antecedent parties, if he takes it by indorsement before it becomes due, acquires a valid title, and may recover upon it, though, as between the antecedent parties, the transaction may be invalid.

The holder of such paper before it is due, is not bound to prove that he is a *bona fide* holder for a valuable consideration without notice ; for the law will presume this, in the absence of rebutting proof.

If the want, or failure, or illegality of the consideration has been established, or if it be shown that the note was lost, or stolen, before it came into the possession of the holder, it is then incumbent on him to show that he has given value for it.

Since the act of 1845, ch. 352, usurious instruments are not, under any circumstances, avoided, but are made valid securities in all courts, no matter by whom proceedings may be instituted upon them, to the extent of the principal sum, and six per cent. interest.

[In his opinion, in this case, in which the facts are fully stated, the Chancellor says :]

THE CHANCELLOR :

This case though not very important with reference to the amount involved in its decision, is yet not destitute of interest to the commercial community.

It appears that some time in the month of April, 1848, the complainants, trading under the firm of Gwyn & Company, placed in the hands of George Baughman, of the firm of Baughman, Nicholson and Cannon, their promissory note for $1227 33, made payable to the last named firm, dated the 9th of that month, and payable eight months after date, and, as the complainants allege, the note so made and delivered by them to Baughman, was made and delivered upon the offer and agreement of Baughman to procure the same to be discounted for their use at some bank in Baltimore.

VOL 1—38

Baughman did not comply with this, his alleged agreement, but, on the contrary, on the 11th of September, 1848, three months before the maturity of the note, the firm of which he was a member borrowed from the defendant, Lee, twenty-one thousand dollars, and lodged and hypothecated with him as security for the re-payment of the money, this note, with many others, a list of which is given in his answer. Of these notes, it appears some have matured and remain unpaid, and that others have not yet matured, so that a considerable portion of the money loaned is still due.

There is nothing to show that Lee, the defendant, had any knowledge or any reason to suspect when he received this note as stated, that it had been procured by fraud or misrepresentation, or was without consideration; and in his answer he expressly denies that he had any such knowledge or suspicion; and, denying all belief in the allegations of the bill charging such fraud and want of consideration, the defendant avers himself to be a *bona fide* holder of the note, for a full and valuable consideration and without notice.

The bill charges, that the note was pledged by Baughman, Nicholson and Cannon, to the defendant, Lee, to secure the payment of a large sum of money which they had borrowed of him, and upon which he charged and exacted from said firm, usurious interest. The bill does not allege that the defendant knew of the circumstances under which the note was given to Baughman, nor does it charge that the complainants gave Lee notice thereof, until after he had received the same from the payees as security for the loan made to them ; nor is there any allegation that steps were taken by the complainants, by publication or otherwise, to caution the public against taking the note. It is charged, that to secure the money borrowed by Baughman, Nicholson and Cannon, from the defendant, they pledged with him securities to a larger amount than the loan, and the bill insists that Lee is bound, before he can proceed against the complainants upon their note, to apply and exhaust the other securities.

In answer to this charge, the respondent says, that several of

the makers of the other notes, pledged to him, have refused to pay them, and that some of them insist that they were lent to Baughman, Nicholson and Cannon, and that after defendant is repaid his loan with interest, they are entitled to share in the surplus, if any there be.

The complainants in their bill, further insists, that even if the defendant can hold said note as a security at all, it can only be for so much as might be due him after deducting all the interest paid him by said firm on all their transactions, over and above the interest allowed by law; and they call upon the defendant to state the amount of such excessive interest paid within the period of the last three years.

In answer to this ground of equity, the defendant says, that the loan already spoken of, for twenty-one thousand dollars, and a further loan to the same parties of four thousand dollars, on the 16th of August, 1848, and to secure the repayment of which, other notes were hypothecated with the defendant, are the only two transactions of business he has with Baughman, Nicholson and Cannon; that he claims to hold these last notes as also those pledged for the payment of the $21,000 before mentioned, as security for the repayment of the two sums, principal and legal interest, and such costs and expenses as he may incur by the resistance of the makers of the notes, to pay the amount of their liabilities; and denying the right of the complainant to interrogate him on his obligation to answer to the charge of usury, the defendant says, "he was always ready and willing, and is now ready and willing, to surrender to the persons entitled to receive the same, all securities which he holds, upon the payment to him of the amount of Baughman, Nicholson and Cannon's indebtedness to him, with legal interest thereon, and the costs and expenses," &c. But he claims to hold the said securities until he is so repaid, and to adopt such measures as he may be advised, and as may be necessary to recover the sums due upon said securities, until he shall be reimbursed his principal, legal interest, and costs and expenses.

The injunction which was ordered upon the filing of this bill to restrain the defendant, Lee, from passing away the note of

the complainants, or from suing thereon, to recover the amount thereof, was not granted upon the alleged fraud charged to have been practised by Baughman, upon the complainants in obtaining the note; because it was not charged that the defendant had any knowledge of such fraud or imposition, at the time he received it; but upon the ground, as I understood the bill, that it was pledged with the defendant to secure a pre-existing debt, due from Baughman, Nicholson and Cannon to him, the allegation being, that it was placed with the defendant by those parties, to secure the payment of a large sum of money which they *had borrowed* from him; which language was understood by me to mean, which they had borrowed prior to the pledge, and, with that understanding, I thought he might not be entitled to all the rights which attach to a party who had taken a negotiable security, bona fide, and without notice, and in the usual course of business. *Story on Promissory Notes, sec. 195, note 1.*

If Baughman committed a fraud, or practiced an imposition, upon the complainants, that was a matter between him and them, with which the defendant, Lee, had nothing to do, and for which he could be in no way responsible, unless he had notice thereof when he received the note. Baughman was trusted by, and made the agent of, the complainants, and if he abused their confidence, surely they, and not third parties, ignorant of the fraud, must bear the consequences, and this claim to the protection of the court, was the weaker, seeing that after they discovered the imposition, they did not take the usual and proper course to warn the public by advertisement, or in some other way.

Unquestionably, as between them and innocent third parties, who might obtain their note before its maturity, and in the ordinary course of business, there could not be a doubt as to who should bear the loss.

There can be no doubt that a bona fide holder of a negotiable instrument for a valuable consideration, without any notice of facts which affect its validity as between the antecedent parties, if he takes it by indorsement before it comes due, acquires

a valid title, and may recover upon it, although, as between the antecedent parties, the transaction may be invalid. This is a doctrine, Mr. Justice Story says, so long and so well established, and so essential to the security of negotiable paper, that it is laid up among the fundamentals of the law. And as little doubt is there, that the holder of such paper before it is due, is not bound to prove that he is a bona fide holder for a valuable consideration without notice ; for the law will presume that, in the absence of rebutting proofs.

It is true, if the other party has established the want, or failure, or illegality of the consideration, or that the note has been lost or stolen, before it came to the possession of the holder, it may then become incumbent on him, to show that he has given value for it; for, under such circumstances, he ought not to be placed in a better situation than the prior parties, through whom he obtained it. *Story on Promissory Notes, sections* 195, 196, *and the notes to those sections.*

The question then, is, has the defendant, Lee, shown, for the purposes of this motion, that he has given value for this note ? The answer says, speaking responsively to the bill, that upon the security of this note before it became due, and of other notes, a list of which is given, he, at the time he received it, loaned the holders twenty-one thousand dollars, and that he is a fair and bona fide holder, for a full and valuable consideration without notice.

The argument of the complainants' council is, that as the charge of usury has not been answered, it must, upon this motion, be assumed to be true, and that consequently the defendant cannot be regarded as a bona fide holder for value, and the note being stated in the bill to have been procured by fraud, which statement must also, as it is said, at this stage of the cause be treated as true, the defendant is in no better situation than the prior party from whom he obtained it.

The defendant, it is true, does not deny the usury charged against him, insisting that he is under no obligation to do so, but he says he gave value for the note, and that he is now ready and willing, to surrender the securities in his hands, including

38*

this note, upon the payment of the principal sum loaned by him, with legal interest, and his costs.

The act of 1845, ch. 352, has made a material change in the law of this state upon the subject of usury. Prior to that act, and under the law of 1704, ch. 69, securities tainted with usury were utterly void, and if the party lending money upon usurious interest attempted to recover it by legal or equitable proceedings, he would be wholly defeated, on the fact of usury being established. Under that act, however, if the debtor applied to chancery for relief, he would only be relieved, upon paying the principal due, with the legal interest thereon. In other words, he would be required to do equity, before he could ask for equity, which only required he should be relieved from the excessive interest.

But the act of 1845 extends this equitable principle, and provides, that in actions, both at law and in equity, bought by the creditor upon the usurious instrument, the defendant, the debtor, shall be made to pay the principal debt, with interest thereupon at the rate of six per cent. per annum ; so that now usurious instruments are not, under any circumstances, avoided, but are made valid securities in all courts, and no matter by whom proceedings may be instituted upon them, to the extent of the principal sum and six per cent. interest.

Can it be said, then, assuming, for the sake of the argument, that the defendant, Lee, contracted with Baughman, Nicholson and Cannon, for the payment of more than six per cent. interest, that he is not a holder for value of this note. His contract is not void, but is a good and valid contract, to the extent of the sum loaned and six per cent. interest, and this is all he claims. He says, and his answer is to be taken as true, being responsive to the bill, that he gave value for this note paid at the time he received it ; and it is no answer to say that his contract with the parties from whom he received it was usurious ; because, if true, that does not avoid the contract, which is a valid security to the extent that he claims to recover upon it. He must, therefore, be looked upon as a holder for value, and entitled as such to avail himself of the note, taken without notice, and before it was due, to the extent he claims.

It may be, that since the repeal of the 3d section of the act of 1704, ch. 69, which inflicts a forfeiture for usury, a defendant cannot excuse himself from answering the charge of usury, when the justice of the case requires him to answer. But when, as in this case, the defendant claims no more than his principal and legal interest, to which, under the act of 1845, ch. 352, he is entitled, whether he has contracted for the payment of usurious interest or not, there would seem to be no motive for compelling him to answer, if he declines voluntarily to do so. *Cui bono* force him to answer a charge which can have no influence upon the judgment of the court or the rights of the parties.

It is also objected by the complainants, that the defendant has not produced his accounts with Baughman, Nicholson and Cannon, for the last three years prior to the time of filing this bill ; nor stated the amount of excessive interest paid, or supposed to have been paid, by them to him, within that period.

But the answer does give a statement of the only two transactions he has with those parties at this time ; and I cannot see how the complainants can found an equity upon transactions passed and settled. The legality, or the illegality, of former dealings between those parties, which have been settled between themselves, can have nothing to do with the merits of this particular transaction, and are not, therefore, proper subjects of inquiry.

The fate of this controversy must depend upon the considerations which have been adverted to, and which affect it as an independent transaction; and it is to be determined without reference to anterior dealings with which it has no connexion.

My opinion, therefore, is, that the equity upon which the injunction was granted has been removed by the answer, and it must, therefore, be dissolved.

[The order in this case was affirmed, on appeal to the Court of Appeals.]